UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x

JANE DOE 1 and JANE DOE 2,

        Plaintiffs,

    v.                                  **MEMORANDUM AND ORDER**
                                          23-CV-5294 (RPK) (LB)

THE CONGREGATION OF THE
SACRED HEARTS OF JESUS AND
MARY, DIOCESE OF FALL RIVER,
SISTERS OF CHARITY OF MONTREAL,
SISTERS OF CHARITY OF QUEBEC,
MISSIONARY OBLATES OF MARY
IMMACULATE EASTERN PROVINCE,
and BLACK AND WHITE
CORPORATIONS 1–10,

        Defendants.
-------------------------------------------------------x

RACHEL P. KOVNER, United States District Judge:

      Plaintiffs brought this action against five defendants based on sexual abuse they allegedly suffered as children while enrolled in a Catholic boarding school in Massachusetts. This is plaintiffs' second attempt at filing this suit—Judge Cote of the Southern District of New York earlier dismissed an identical action for improper venue. *See Doe 1 v. Congregation of Sacred Hearts of Jesus & Mary*, No. 21-CV-6865, 2023 WL 185496 (S.D.N.Y. Jan. 13, 2023). Because the Eastern District bears no more relationship to the conduct underlying plaintiffs' claims than does the Southern District, plaintiffs' claims against the four defendants that objected on venue grounds are dismissed again on that basis. As for the remaining defendant, the Missionary Oblates of Mary Immaculate Eastern Province, plaintiffs' claims are dismissed as barred by the statute of limitations.

1

## BACKGROUND

Plaintiffs' complaint in this action repeats the same factual allegations raised in their amended complaint in the prior *Doe I* suit. Judge Cote summarized those allegations, which are assumed to be true for the purposes of this order, as follows:

> In the 1960s, plaintiffs Jane Doe 1 and Jane Doe 2 lived in Brooklyn, New York until their mother enrolled them as students at Sacred Hearts Academy (the "Academy") in Fairhaven, Massachusetts. Plaintiffs started at the Academy when they were five and six years old and remained students there until 1970.
>
> During their six years at the Academy, the plaintiffs were repeatedly subjected to "hundreds of sexual offenses" by priests and others controlled by or affiliated with the defendants. The [complaint] includes details of horrific sexual abuse that occurred to the plaintiffs at the Academy, as well as at the St. Joseph's Orphanage and the Provincial House, both located in Fairhaven, Massachusetts. The [complaint] also outlines, with somewhat less specificity, other instances of abuse occurring during weekend trips to, for example, the Oblates' Seminary and Mission House in Essex, New York and an Oblate Seminary in Bucksport, Maine. Finally, it includes a handful of allegations, devoid of any factual detail, that similar incidents occurred in Newburgh, New York and "other known and unknown locations" in New York, Maine, Massachusetts, Connecticut, Rhode Island, New Hampshire, and Vermont.

*Doe I*, 2023 WL 185496, at *1 (emphasis omitted); *see generally* Compl. (Dkt. #1).

Plaintiffs filed the *Doe I* action in the Southern District of New York on August 14, 2021. Their original complaint brought claims against the Congregation of the Sacred Hearts of Jesus and Mary ("Sacred Hearts"), the Diocese of Fall River ("Fall River"),[1] the Sisters of Charity of Montreal—all religious nonprofit corporations—as well as several unknown "Black and White Corporations." *See* Compl., *Doe I*, No. 21-CV-6865 (S.D.N.Y. Aug. 14, 2021), ECF No. 1 ("Original SDNY Compl."). On April 20, 2022, plaintiffs amended their complaint, adding as defendants the Sisters of Charity of Quebec and the Missionary Oblates of Mary Immaculate

---

[1] The entity sued as the Diocese of Fall River states that it is properly referred to as the "Roman Catholic Bishop of Fall River, a Corporation Sole." Defendant Roman Catholic Bishop of Fall River Mem. in Supp. of Mot. to Dismiss 1 (Dkt. #37-6). For simplicity, this order adheres to the naming conventions used in plaintiffs' complaint.

2

Eastern Province ("Oblates"). *See* Am. Compl., *Doe I*, No. 21-CV-6865 (S.D.N.Y. Apr. 20, 2022), ECF No. 33 ("Am. SDNY Compl.").

After all five defendants moved to dismiss on a variety of grounds, Judge Cote dismissed all of plaintiffs' claims for improper venue on January 13, 2023. *See Doe I*, 2023 WL 185496.

Plaintiffs then refiled their action in this Court on July 11, 2023 against the same five defendants. *See* Compl. Invoking diversity jurisdiction, their complaint brings five common-law claims under the law of either New York or Maine, which plaintiffs allege are substantially the same: negligence; negligent training, supervision, and retention; gross negligence; premises liability; and breach of fiduciary duty. Compl. ¶¶ 114–205.

Each of the five defendants has again moved to dismiss.

## DISCUSSION

The defendants' motions to dismiss raise several grounds for dismissing plaintiffs' complaint: lack of personal jurisdiction, improper venue, untimeliness, and failure to state a claim. For the following reasons, plaintiffs' claims against Sacred Hearts, Fall River, the Sisters of Charity of Montreal, and the Sisters of Charity of Quebec are dismissed for improper venue. Plaintiffs' claims against the Oblates are dismissed as barred by the statute of limitations.

I. Venue

Plaintiffs' claims against defendants Sacred Hearts, Fall River, the Sisters of Charity of Montreal, and the Sisters of Charity of Quebec are dismissed for improper venue. "On a motion to dismiss a complaint under Rule 12(b)(3) for improper venue, the plaintiff bears the burden of establishing that venue is proper." *Cold Spring Harbor Lab'y v. Ropes & Gray LLP*, 762 F. Supp. 2d 543, 551 (E.D.N.Y. 2011) (quotation marks and citation omitted). If the court relies only on pleadings and affidavits, the plaintiff need only make a *prima facie* showing of venue. *See Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005). "[T]he Court accepts facts alleged in

3

the complaint as true and draws all reasonable inferences in plaintiff's favor." *Person v. Google Inc.*, 456 F. Supp. 2d 488, 493 (S.D.N.Y. 2006) (brackets and citation omitted). The court also "may consider evidentiary matters outside the pleadings, by affidavit or otherwise, regarding the" appropriateness of venue. *Zaltz v. JDATE*, 952 F. Supp. 2d 439, 447 (E.D.N.Y. 2013) (citation omitted). When, as here, dismissal is sought based on both lack of personal jurisdiction and lack of venue, the Court may address venue first when prudential justifications favor doing so, *see, e.g.*, *Leroy v. Great W. United Corp.*, 443 U.S. 173, 181 (1979)—as they do here because Judge Cote has already ably articulated the venue problems with plaintiffs' case, which were not remedied by refiling in the Eastern District.

The federal venue statute provides that a civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2). "[F]or venue to be proper, *significant* events or omissions *material* to the plaintiff's claim must have occurred in the district in question, even if other material events occurred elsewhere." *Gulf Ins. Co.*, 417 F.3d at 357. Venue may be proper "in multiple judicial districts as long as 'a substantial part' of the underlying events took place in those districts." *Id.* at 356 (citation omitted). Further, venue must be proper as to each defendant and each claim. *See Prospect Cap. Corp. v. Bender*, No. 09-CV-826, 2009 WL 4907121, at *2 (S.D.N.Y. Dec. 21, 2009). "Thus, when a plaintiff relies on § 1391(b)(2) to defeat a venue challenge," a court should first "identify the nature of the claims and the acts or omissions that the plaintiff alleges give rise to those claims," then "determine whether a substantial part of those acts or omissions occurred in the district where suit was filed." *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 432 (2d Cir. 2005).

4

"'Substantiality' for venue purposes is more a qualitative than a quantitative inquiry, determined by assessing the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum, and not by simply adding up the number of contacts." *Id.* at 432–33. "When material acts or omissions within the forum bear a close nexus to the claims, they are properly deemed 'significant' and, thus, substantial, but when a close nexus is lacking, so too is the substantiality necessary to support venue." *Id.* at 433.

Plaintiffs have not made a *prima facie* showing that venue is proper in the Eastern District as to defendants Sacred Hearts, Fall River, the Sisters of Charity of Montreal, and the Sisters of Charity of Quebec. As Judge Cote's decision for the Southern District explained, the gravamen of plaintiffs' complaint concerns "events that transpired at the Academy, St. Joseph's Orphanage, and the Provincial House, all of which were in the District of Massachusetts." *Doe 1*, 2023 WL 185496, at *2. "[P]laintiffs also outline, with some detail, incidents relevant to their claims that occurred in Maine, as well as in Essex, New York, which is in the Northern District of New York." *Ibid.*

But plaintiffs have not alleged a single incident of abuse occurring in the Eastern District of New York. Instead, plaintiffs allege that "nuns and priests under Defendants' direction and control" transported plaintiffs from their home in Brooklyn to the locations where they were eventually abused in Massachusetts and Maine. *See* Compl. ¶¶ 36–45, 98–100; Pls.' Mem. of L. in Opp. to Defs.' Mots. to Dismiss ("Pls.' Resp.") 33–34 (Dkt. #42-11). Far from being "significant" or "material," *Gulf Ins. Co.*, 417 F.3d at 357, this fact is incidental to the abuse plaintiffs experienced and the derivative claims they bring. Plaintiffs' negligence claims, at bottom, turn on the failure of defendants to prevent plaintiffs from being sexually abused while under defendants' care. None of that sexual abuse—and none of defendants' alleged failures to

5

adequately train, supervise, retain, warn, remedy, or otherwise act to prevent plaintiffs' abuse—occurred in the Eastern District.  Defendants' transportation of plaintiffs to school does not have a "close nexus" with any of their claims.  To illustrate, the substance of plaintiffs' negligence claims would be identical had plaintiffs' parents seen their children off to Sacred Hearts Academy themselves, rather than relying on defendants for transportation.  Venue in the Eastern District is therefore inappropriate.  *See Fisher v. Int'l Stud. Exch., Inc.*, 38 F. Supp. 3d 276, 285 (E.D.N.Y. 2014) (finding venue in New York improper where "the causes of action set forth in Plaintiff's Complaint center around the alleged sexual abuse of Plaintiff by Preiss and ISE's failure to protect Plaintiff, all of which occurred in Montana").

Contrary to plaintiffs' arguments, New York's Child Victims Act ("CVA") does not create venue in this district.  The CVA extended and revived the statute of limitations on certain civil suits brought by childhood sexual-abuse victims, but it "does not create a cause of action, nor does it regulate conduct." *Holloway v. Holy See*, 537 F. Supp. 3d 502, 505 (S.D.N.Y. 2021) (rejecting argument that New York's enactment of the CVA creates venue in New York).  Since the enactment of the CVA is not itself an act or omission giving rise to plaintiffs' claims for negligence, premises liability, and breach of fiduciary duty, the location of the statute's enactment is not relevant to venue.

Plaintiffs' request—in the alternative—that the case be transferred to the Northern District of New York, Pls.' Resp. 34, is denied.  All defendants raising venue arguments oppose transfer to the Northern District and ask that the case be dismissed instead.  Sacred Hearts Reply in Supp. of Mot. to Dismiss 7–9 (Dkt. #44); Fall River Reply in Supp. of Mot. to Dismiss 8–9 (Dkt. #43); Sisters of Charity of Montreal Reply in Supp. of Mot. to Dismiss 10 (Dkt. #45); Sisters of Charity of Quebec Reply in Supp. of Mot. to Dismiss ("Sisters of Charity of Quebec Reply") 10 (Dkt.

#46).  Both the Sisters of Charity of Montreal and the Sisters of Charity of Quebec ask that, if the case is not dismissed, it be transferred instead to the District of Massachusetts.  Sisters of Charity of Montreal Mem. of L. in Supp. of Mot. to Dismiss 23–25 (Dkt. #39-5); Sisters of Charity of Quebec Reply 10.

If venue does not lie where an action was brought, 28 U.S.C. § 1406(a) provides that "[t]he district court . . . shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  "Courts enjoy considerable discretion in deciding whether to transfer a case in the interest of justice." *Daniel*, 428 F.3d at 435.  "A 'compelling reason' for transfer is generally acknowledged when a plaintiff's case, if dismissed, would be time-barred on refiling in the proper forum." *Ibid.* (citation omitted).  However, a transfer is not in the interest of justice where it "would reward plaintiffs for their lack of diligence in choosing a proper forum." *Spar, Inc. v. Info. Res., Inc.*, 956 F.2d 392, 394 (2d Cir. 1992).  And while plaintiffs are entitled to select the forum they believe is most favorable when first filing their suit, a transfer of venue is not meant to afford plaintiffs a further opportunity for "forum shopping." *Id.* at 395; *see Blakely v. Lew*, 607 F. App'x 15, 18 (2d Cir 2015) (affirming dismissal for improper venue where district court concluded that appellants were engaged in "impermissible forum shopping").

Dismissal, rather than transfer, is warranted here.  It is far from clear that venue would lie in plaintiffs' requested forum of the Northern District of New York, because this lawsuit is focused on alleged sexual abuse at a Massachusetts boarding school.  And virtually all the conduct alleged to have occurred in the Northern District relates only to the Oblates, *see* Compl. ¶¶ 24, 46, 52, 103, a defendant being dismissed from this action on timeliness grounds, *see infra* pp. 8–14.  What's more, plaintiffs' request to transfer the case to the Northern District—after twice filing in other New York judicial districts with only tenuous connections to the claims at issue—smacks of forum

7

shopping. Plaintiffs admit as much, stating that they filed suit in New York to take advantage of the CVA's extended statute of limitations and asking not to be transferred to Massachusetts—where venue would clearly be proper—because "[t]here is no equivalent to the CVA in Massachusetts." Pls.' Resp. 34. Under these circumstances, transfer to the Northern District of New York would not be in the interests of justice. Accordingly, plaintiffs' claims against Sacred Hearts, Fall River, the Sisters of Charity of Montreal, and the Sisters of Charity of Quebec are dismissed.

## II. Statute of Limitations

Plaintiffs' claims against the Oblates are also dismissed. The Oblates has waived any venue argument. Oblates Reply in Supp. of Mot. to Dismiss ("Oblates Reply") 1 n.1, 10 (Dkt. #47); *see Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999) ("A district court may not dismiss a case *sua sponte* for improper venue absent extraordinary circumstances."). Instead, the Oblates correctly argues that plaintiffs' claims against the order must be dismissed as untimely.

"Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 798 n.12 (2d Cir. 2014). When considering a motion under Rule 12(b)(6), a court may consider only (i) the complaint itself, (ii) documents either attached to the complaint or incorporated in it by reference, (iii) documents the plaintiff relied on and knew of when bringing suit, and (iv) matters in the public record that are subject to judicial notice. *See, e.g.*, *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004); *Leonard F. v. Israel Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999). The Court "assume[s] the[] veracity" of "factual allegations" in the complaint but not its "legal

conclusions," *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), and "draw[s] all reasonable inferences in favor of the plaintiff," *Buon v. Spindler*, 65 F.4th 64, 76 (2d Cir. 2023).

      Assuming that plaintiffs are citizens of New York—the assumption most favorable to plaintiffs—this lawsuit is governed by New York's statute of limitations.  Because this case arises under federal diversity jurisdiction, New York choice-of-law rules apply.  *Stuart v. Am. Cyanamid Co.*, 158 F.3d 622, 626 (2d Cir. 1998).  "New York courts generally apply New York's statutes of limitations, even when the injury giving rise to the action occurred outside New York," subject to a "traditional exception" known as the "'borrowing' statute."  *Id.* at 627 (citation omitted).  Under that statute, for any claims accruing outside of New York State to a nonresident plaintiff, the statute of limitations is the shorter of New York's applicable limitations period and that of the state where the cause of action accrued.  N.Y. C.P.L.R. § 202; *see Holloway*, 537 F. Supp. 3d at 507 n.4.  For any claims accruing outside of New York State to a resident plaintiff, New York's limitations period governs.  *Ibid.*  As a result, under New York law, plaintiffs are treated most favorably if they are citizens of New York, in which case New York's statute of limitations always governs.

      In turn, the most favorable statute of limitations that New York could prescribe for plaintiffs' claims is a period of two years from the effective date of the CVA.  Under N.Y. C.P.L.R. § 208(b), enacted by the CVA, a plaintiff who suffers sexual abuse while under the age of eighteen may bring a timely civil suit based on that abuse until he or she turns fifty-five.  For any already expired claims predicated on sexual abuse against children, the CVA also enacted a one-time, two-year revival period for plaintiffs to bring suit, which closed on August 14, 2021.  N.Y. C.P.L.R. § 214-g; *see Jones v. Cattaraugus-Little Valley Cent. Sch. Dist.*, 96 F.4th 539, 543 (2d Cir. 2024) (per curiam).  While there is a split in authority on whether the CVA revived claims based on sexual abuse occurring outside of New York, the Court need not decide that question to resolve

9

this motion, and it accordingly assumes—favorably to plaintiff—that the CVA did so.  *Compare Samuel W. v. United Synagogue of Conservative Judaism*, 194 N.Y.S.3d 25, 26–27 (1st Dept. 2023) (holding the CVA applies to out-of-state claims accruing to New York resident plaintiffs), *and Shapiro v. Syracuse Univ.*, 173 N.Y.S.3d 769, 772–74 (4th Dept. 2022) (same), *with Holloway*, 537 F. Supp. 3d at 505 n.2 (holding that the CVA does not apply to out-of-state claims), *and Carreras v. Fontanez*, No. 20-CV-5765 (MKV), 2022 WL 956029, at *3 (S.D.N.Y. Mar. 30, 2022) (same).

Plaintiffs' claims are untimely even if the CVA revives claims relating to sexual abuse that occurred outside New York State.  Because plaintiffs were both over the age of fifty-five at the time of filing suit, plaintiffs' claims would be timely only if they were made within the CVA's two-year revival period.  Plaintiffs filed their original complaint—which did not mention the Oblates—in the Southern District of New York on August 14, 2021, the last day of the revival period.  *See* Original SDNY Compl.  Plaintiffs amended their complaint to include claims against the Oblates eight months later.  *See* Am. SDNY Compl.  Plaintiffs' claims against the Oblates in the Southern District would thus have been timely only if they related back to plaintiff's original claim under the CVA.  If so, then plaintiffs' claims against the Oblates here are timely as well, since they filed the present suit within six months after the termination of the suit in the Southern District.  *See* N.Y. C.P.L.R. § 205(a) (providing that an otherwise untimely action is timely if commenced within six months of a dismissal of a prior action that was timely, with exceptions not applicable here).

Under the New York rules incorporated into federal law, plaintiffs' claims against the Oblates relate back to their original claims only if, among other requirements, the Oblates shares an identity of interest with the defendants named in the complaint filed within the statute of

10

limitations. Specifically, Federal Rule of Civil Procedure 15(c)(1)(A)—the only basis for relation back that plaintiffs invoke—provides that an amended pleading relates back to an earlier pleading when "the law that provides the applicable statute of limitations allows relation back." Fed. R. Civ. P. 15(c)(1)(A); *see* Pls.' Resp. 10 n.3 (conceding that alternative relation-back rules in Federal Rule of Civil Procedure 15(c)(1)(B) and (C) do not apply). In turn, N.Y. C.P.L.R. § 203(b), (f) provides that a new pleading relates back to an earlier one only if "(1) both claims arose out of same conduct, transaction or occurrence, (2) the new party is 'united in interest' with the original defendant, and by reason of that relationship can be charged with such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits and (3) the new party knew or should have known that, but for [a] mistake by plaintiff as to the identity of the proper parties, the action would have been brought against him as well." *Buran v. Coupal*, 661 N.E.2d 978, 981–82 (N.Y. 1995) (quotation marks and citation omitted).

Plaintiffs' claims against the Oblates do not relate back to their timely filed complaint in the Southern District of New York because the Oblates does not share an identity of interest with any of the defendants in the timely complaint.[2] To assess unity of interest, New York courts examine two factors: "(1) the jural relationship of the parties whose interests are said to be united and (2) the nature of the claim asserted against them by the plaintiff." *DaCosta v. City of New York*, 296 F. Supp. 3d 569, 586 (E.D.N.Y. 2017) (citation omitted). A "jural relationship" is a "legal relationship giving rise to potential liability." *Ibid.* (citation omitted). A jural relationship

---

[2] Plaintiffs do not argue that the statute of limitations should be equitably tolled. And though plaintiffs' complaint states in passing that "[t]he Oblates are estopped from raising a statute of limitations defense in New York because they fraudulently concealed and covered up acts of child sexual abuse committed in the State of New York," Compl. ¶ 31, it does not allege any "specific actions" by the Oblates that "somehow kept [plaintiffs] from timely bringing suit" as would be necessary to support application of equitable estoppel, *Zumpano v. Quinn*, 849 N.E.2d 926, 929 (N.Y. 2006). Plaintiffs' response to the Oblates's motion to dismiss does not mention equitable estoppel at all. Any argument to this end is thus forfeited as inadequately developed. *See United States v. Stegemann*, 701 F. App'x 35, 38 (2d Cir. 2017) (affirming district courts' discretion to treat a "perfunctory, undeveloped argument as forfeited").

11

supporting relation back as to a particular claim exists when the parties are "united in interest," because due to "some legal relationship between the defendants they necessarily have the same defenses to the plaintiff's claim" and "will stand or fall together." *Connell v. Hayden*, 443 N.Y.S.2d 383, 393 (2d Dept. 1981). "The most frequently cited relationship creating a unity of interest is vicarious liability," *Amaya v. Garden City Irrigation, Inc.*, 645 F. Supp. 2d 116, 122 (E.D.N.Y. 2009), "such as that which exists between joint property owners or employers and employees acting within the scope of their employment," Vincent C. Alexander, McKinney Practice Commentary, N.Y. C.P.L.R. § 203 (2011). Indeed, "the unity-of-interest prong is difficult to satisfy in the absence of a classical vicarious liability relationship." Alexander, *supra*.

Plaintiffs have not alleged any relationship between the Oblates and the three religious nonprofit corporations in the timely complaint by virtue of which the claims against the Oblates and one of the earlier defendants would necessarily stand or fall together. They have not alleged, for instance, that the Oblates is vicariously liable for the acts of one of the other religious corporations, or vice versa. Plaintiffs argue only that the Oblates shares a unity of interest with the other, timely named defendants because all defendants are "affiliated with the Catholic Church" and "are all part of the same religious group." Pls.' Resp. 13. But obviously, a factfinder could find one religious order acted negligently in failing to prevent sexual abuse, while another religious order did not, even though both orders are affiliated with the Catholic Church. The allegation that defendants share a common religion, or are "affiliated" in some unspecified way to a common church, therefore does not come close to yielding a plausible inference that they are so related that claims against one defendant will necessarily rise or fall with claims against the others. And it would be entirely improper to require the Oblates to defend this untimely action simply because all defendants are Catholic.

12

Because plaintiffs' claims against the Oblates flunk the second prong of the *Buran* test, the parties' disagreement over application of the third prong of the *Buran* test is irrelevant. The bulk of the parties' briefing on the applicability of the relation-back doctrine concerns the third prong of the *Buran* test: whether filing a suit against "John Doe" defendants in lieu of the defendants' true names can qualify as a "mistake" under N.Y. C.P.L.R. § 203. *See* Pls.' Resp. 13–15; Oblates Reply 2–7. No matter the answer to that question, however, all cases cited by plaintiff agree that, even in a John Doe suit, N.Y. C.P.L.R. § 203 requires plaintiffs to separately satisfy the "unity of interest" prong of the *Buran* test, which plaintiffs have not done. *See Bumpus v. N.Y.C. Transit Auth.*, 883 N.Y.S.2d 99, 107 (2d Dept. 2009) ("[W]hen an originally-named defendant and an unknown 'Jane Doe' party are united in interest, i.e. employer and employee, the later-identified party may, in some instances, be added to the suit after the statute of limitations has expired pursuant to the 'relation-back' doctrine of CPLR 203(f), based upon post-limitations disclosure of the unknown party's identity."); *Kirk ex rel. Kirk v. Univ. OB-GYN Assocs, Inc.*, 960 N.Y.S.2d 793, 1193–94 (4th Dept. 2013); *DaCosta*, 296 F. Supp. 3d at 586, 606.

Finally, by not raising it in their response, plaintiffs forfeited any argument that N.Y. C.P.L.R. § 1024, which permits prosecution of a suit against an unknown party, applies to their claims against the Oblates. *See* Pls.' Resp. 12–15. Even so, the Court finds that plaintiffs have not satisfied that statute's requirements. Section 1024 requires the plaintiff to have, *inter alia*, "describe[d] the John Doe party in such form as will fairly apprise the party that he is the intended defendant" in the original pleading. *Hogan v. Fischer*, 738 F.3d 509, 519 (2d Cir. 2013) (brackets, quotation marks, and citation omitted). Plaintiff's original complaint does not meet this standard— although it names "Black and White Corporations 1–10" as defendants in the caption, it does not describe any conduct at all attributable to any unknown entity. *See generally* Original SDNY

13

Compl. Besides the fact of the caption, there is simply no indication that plaintiffs sought in their original complaint to bring claims against any unknown defendants, rendering section 1024 inapplicable.

Accordingly, the relation-back doctrine does not apply, and plaintiffs' claims against the Oblates are untimely. Plaintiffs' claims against the Oblates are dismissed.

### III.     Leave to Amend

Plaintiffs' complaint is dismissed without leave to amend. While plaintiffs ask in their response brief for leave to amend their complaint to remedy any defects, they do not identify any additional factual allegations they seek to add. Pls.' Resp. 35–36. Plaintiffs have already effectively been granted two opportunities to amend—once in the Southern District, and once upon refiling in the Eastern District. None of the bases for the Court's decision today are a surprise. Defendants' motions to dismiss in the Southern District raised the same objections—including venue and the statute of limitations—that they raise here. And Judge Cote's opinion identified the likely venue problems plaintiffs would encounter filing anywhere other than Massachusetts. Because plaintiffs have failed to remedy these shortcomings in their complaint in this action, granting leave to amend would be futile.

## CONCLUSION

For the foregoing reasons, defendants' motions to dismiss are granted. Plaintiffs' claims against the Missionary Oblates of Mary Immaculate Eastern Province are dismissed with prejudice as barred by the statute of limitations, while their claims against all other defendants are dismissed without prejudice to refiling in a judicial district where venue lies. The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

    /s/ Rachel Kovner
RACHEL P. KOVNER
United States District Judge

Dated: September 24, 2024
       Brooklyn, New York